UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DONALD COLLINS, Plaintiff, v. GREATER BOSTON FOOD BANK, FOOD FOR FREE, FREEMAN COMPANY, DIVERSIFIED COMMUNICATIONS, MASSACHUSETTS MILITARY SUPPORT FOUNDATION, BRIAN MORRILL, JACK (LAST NAME UNKNOWN), CARYN LEAVITT, WYNTER COURMONT, DON COX, and DOES 1–10, Defendants. | * | Civil Action No. 25-cv-10819-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, Plaintiff Donald Collins ("Collins") asserts civil rights and tort claims against ten named defendants and several unknown defendants based on alleged discriminatory conduct and misappropriation of a food delivery logistics model. Now before the Court are the defendants' motions to dismiss. [ECF No. 50]; [ECF No. 61]; [ECF No. 63]; [ECF No. 67]; [ECF No. 69]; [ECF No. 71].[1] For the following reasons, the motions of the Greater Boston

[1] The Court notes two additional issues related to the pending motions. First, [ECF No. 61] was also filed at [ECF No. 60-1]. The Court's resolution of [ECF No. 61] resolves the duplicate filing. Second, Defendant Food For Free also filed a motion to dismiss the Second Amended

Food Bank ("GBFB") and Brian Morrill ("Morrill"), [ECF No. 50]; Freeman Company and two employees, [ECF No. 61]; and Wynter Courmont ("Courmont"), [ECF No. 63], are **GRANTED** as to Collins's claims under federal law. In light of this ruling, the Court declines to exercise supplemental jurisdiction over the pendent state law claims. The Third Amended Complaint is therefore **DISMISSED** with leave to amend, and the remaining motions are **DENIED AS MOOT**.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Third Amended Complaint, [ECF No. 45 ("Third Am. Compl.")], the factual allegations of which the Court assumes to be true for purposes of ruling on these motions to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The Court has also reviewed the exhibits filed in support of Collins's claims. [ECF No. 75].[2]

Collins lives in Massachusetts. [Third Am. Compl. ¶ 1]. Sometime prior to 2020, he launched Z19 Boston Truck Services, which he describes as a "logistics and food-access service model . . . designed to assist nonprofits without trucks by coordinating transportation and delivery of donated food." [Id. ¶ 15]. For a time, he enjoyed relationships of "good-faith

---

Complaint, [ECF No. 65], which is **DENIED AS MOOT** because the Second Amended Complaint has been superseded by the filing of the Third Amended Complaint.

[2] The Court liberally construes documents filed pro se. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). It is the custom in this circuit to "hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects." Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008). The Court does so where possible here. Nonetheless, the Third Amended Complaint relays these facts in an abbreviated fashion, and often leaves out details that would help to contextualize or clarify exactly what happened. The Court states the facts as alleged in the Third Amended Complaint as clearly as possible.

collaboration" with "nonprofits and food access stakeholders" while providing food deliveries throughout Greater Boston using the Z19 model. [Id. ¶ 16].

Beginning in 2020, however, things started to go less smoothly. That year, Don Cox ("Cox"), the president and CEO of the Massachusetts Military Support Foundation, "engaged in hostile, demeaning, and discriminatory conduct toward [Collins]."[3] [Third Am. Compl. ¶ 17]. Collins reported Cox's conduct to Food For Free and GBFB, [id. ¶ 18], but both entities "failed to investigate, discipline, or otherwise address" it, [id. ¶ 19]. Collins[4] later experienced "incidents of racially hostile treatment" while conducting food donation pickups at Amazon facilities between 2020 and 2024. [Id. ¶¶ 20–21]. After he reported these incidents, Morrill, a GBFB employee, contacted Amazon about him, [id. ¶ 21], and Amazon then denied Collins's access for pickups. [Id. ¶ 22].

In 2023, Collins provided "food access services" at a "Boston-area food industry event promoted by . . . Diversified Communications" at which GBFB was not present. [Third Am. Compl. ¶ 23]. The next year, Courmont, a Diversified Communications employee, helped to "draft[] or enforc[e]" a new policy for the 2024 industry event that required all "donations to be made exclusively to [GBFB]," [id. ¶¶ 24–25], effectively excluding Collins. Further, after GBFB and Morrill asked Diversified Communications and Freeman Company to remove Collins

[3] Collins elaborates in an exhibit, [ECF No. 75-4], that in May 2020, while he was loading his truck with donations, Cox accused him of stealing and then attempted to use his own truck to block Collins's truck from leaving. [Id. at 1].

[4] In several places, Collins refers to his "organization," [Third Am. Compl. ¶ 23], or his "nonprofit food access operations," [id. ¶ 20], but he does not clearly state what organization he operates or belongs to, and he refers to himself interchangeably with the organization, e.g., [id. ¶ 28 (contrasting "Plaintiff" with "similarly situated non-Black organizations")]. As explained below, Collins cannot assert harms to his organization in this lawsuit, so, in the interest of liberally construing pro se pleadings, the Court infers that Collins refers primarily to himself when he refers to the organization and its operations.

from the 2024 event, he was removed "while similarly situated non-Black organizations were permitted to remain and participate." [Id. ¶¶ 26–28].

Finally, after these events, GBFB began using a logistics system "substantially similar" to Collins's system and, without Collins's consent or participation, launched its service in a public partnership with Food For Free. [Third Am. Compl. ¶ 29].

### B. Procedural History

Collins filed the first complaint in this action on April 4, 2025, naming himself and Wrigcoll Enterprise Inc. as joint plaintiffs. [ECF No. 1]. After the Court advised Collins that he could not represent Wrigcoll, [ECF No. 5]; [ECF No. 12], on September 22, 2025, Collins filed an amended complaint, naming only himself as plaintiff. [ECF No. 15]. On October 28, 2025, the Court ordered Collins to file a second amended complaint that identified "the specific alleged misconduct of each defendant," [ECF No. 19 at 1], and on November 24, 2025, Collins filed a second amended complaint consistent with the Court's instructions, [ECF No. 23], after which summons issued, [ECF No. 24]. On January 9, 2026, Courmont moved for a more definite statement, [ECF No. 32], which the Court allowed on January 26, 2026, [ECF No. 35]. On February 3, 2026, Collins filed the operative Third Amended Complaint. [ECF No. 45].

Between February 17 and April 24, 2026, the various defendants filed a total of eight motions to dismiss. [ECF No. 50]; [ECF No. 60]; [ECF No. 61]; [ECF No. 63]; [ECF No. 65]; [ECF No. 67]; [ECF No. 69]; [ECF No. 71]. Collins opposed the motions, [ECF No. 59]; [ECF No. 70], and filed an appendix of exhibits, [ECF No. 75]. The motions are now ripe for decision.

## II. LEGAL STANDARD

Defendants' various motions challenge the Court's jurisdiction, see Fed. R. Civ. P. 12(b)(1), and assert that the Third Amended Complaint fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6). "When a court is confronted with motions to

dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter," because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149–50 (1st Cir. 2002) (first citing Ne. Erectors Ass'n of the BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995); and then citing Bell v. Hood, 327 U.S. 678, 682 (1946)).

A motion to dismiss pursuant to Rule 12(b)(1) requires the Court to determine whether the facts alleged in the complaint, "taken at face value," support the existence of subject-matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017) (citing Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003)). The Court "appl[ies] a standard of review 'similar to that accorded a dismissal for failure to state a claim' under subsection 12(b)(6)." Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). It must "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [Plaintiff's] cause." Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987) (first citing Guessefeldt v. McGrath, 342 U.S. 308, 310 (1952); and then citing Chongris v. Bd. of Appeals of Andover, 811 F.2d 36, 37 (1st Cir. 1987)). "Dismissal can be justified only if it clearly appears that no colorable hook exists upon which subject matter jurisdiction can be hung." Id. Even so, Plaintiff "bears the burden of establishing that the federal court has subject-matter jurisdiction." Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018) (citing Gordo-González, 873 F.3d at 35).

A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to determine whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The

facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but a pleading must set forth "more than labels and conclusions." Twombly, 550 U.S. at 555. Legal conclusions couched as facts or "[t]hreadbare recitals of the elements of a cause of action" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555); see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

The Court may not hear a case unless it has subject-matter jurisdiction. See Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005). Courts must "satisfy themselves that subject-matter jurisdiction has been established," id. at 410, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action," Fed. R. Civ. P. 12(h)(3). As relevant here, for the Court to have subject-matter jurisdiction, the plaintiff must have standing to bring the lawsuit. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Raines v. Byrd, 521 U.S. 811, 820 (1997)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The party seeking to bring the lawsuit "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan, 504 U.S. at 560–61).

Several defendants urge the Court to dismiss this case for lack of jurisdiction on the ground that Collins lacks standing because he alleges injuries only to his nonprofit organization and not to himself. See [ECF No. 52 at 6–7]; [ECF No. 64 at 5–6]. The Court disagrees. The Third Amended Complaint is vague about the nonprofit's legal status, but even assuming that it

is a formally constituted legal entity, it appears that Collins is its sole member and that its rights are bound up with Collins's own rights. Given these facts, the Court finds that Collins, who is proceeding pro se and may not have been aware of the need to distinguish his own injuries, has pleaded a sufficient injury to support standing and subject-matter jurisdiction.

### B. Claims Under Federal Law

#### 1. § 1981

"To state a discrimination claim under [42 U.S.C. §] 1981, a plaintiff must show that he is a member of a racial minority, that the defendant discriminated against him on the basis of his race, and that the discrimination implicated the right to make and enforce contracts," Alston v. Spiegel, 988 F.3d 564, 572 (1st Cir. 2021) (citing Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013)).[5] Accordingly, Collins must identify some contract to which he was a party, id. (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006)), or some specific opportunity to make a contract, see Garrett v. Tandy Corp., 295 F.3d 94, 100–01 (1st Cir. 2002), that was impaired by a defendant's race-based conduct. Alston, 988 F.3d at 572.[6]

Collins asserts generally that GBFB, through Morrill, interfered with his "business relationships and contractual opportunities," and that this interference was "based on race," [Third Am. Compl. ¶ 33], but he does not plead the existence of a contract under which he had

---

[5] A § 1981 claim can also allege a violation of another right protected by statute, see John B. Cruz Constr. Co. v. Beacon Cmtys. Corp., 169 F.4th 89, 99 (1st Cir. 2026), including the right to participate in legal proceedings and to receive certain legal protections, see 42 U.S.C. § 1981, but the facts pleaded in the Third Amended Complaint do not implicate any of those other rights.

[6] Collins also seeks to frame his § 1981 claim against Morrill and GBFB in terms of "retaliation," see [Third Am. Compl. ¶ 37], but to make out a retaliation claim, a plaintiff must show "an adverse employment action," Pina v. Children's Place, 740 F.3d 785, 801 (1st Cir. 2014), and Collins has not claimed that he was ever an employee of either of those parties. More generally, the fact that retaliation claims are available under § 1981 does not relieve a plaintiff of the obligation to plead the existence or prospect of a contractual relationship such as an employment agreement.

rights or identify an opportunity to make contracts that was interfered with by GBFB or Morrill. The Third Amended Complaint attributes four actions to GBFB and Morrill—namely, that they (1) did not investigate a third party's alleged "hostile, demeaning, and discriminatory conduct" toward Collins, [id. ¶¶ 17–19]; (2) "contacted Amazon representatives" about Collins, resulting in Amazon "terminat[ing] or restrict[ing] [his] access to donation pickups," [id. ¶¶ 21–22]; (3) "advocated for [Collins's] removal from [a] 2024 event," [id. ¶ 26]; and (4) "implemented a substantially similar logistics service" to the model created by Collins, [id. ¶¶ 29–30]. None of these acts are alleged to have impaired a specific contractual relationship, as is required to state a claim under the statute. See Alston, 988 F.3d at 572.

Collins also asserts that Diversified Communications and Courmont excluded him from "event-related business opportunities" and that Freeman Company and Caryn Leavitt, by removing him from the 2024 industry event, interfered with his "right to make and enforce contracts on the same terms as non-Black organizations." [Third Am. Compl. ¶ 34]. As with GBFB and Morrill, however, Collins has not pleaded the existence of a particular contractual relationship, nor any details about the 2024 event establishing that being removed impaired his ability to make contracts. See Garrett, 295 F.3d at 101 (requiring an allegation of "some negative effect on the [plaintiff's] ability to contract"). Without an allegation of an existing contract or a sufficiently detailed description of an impaired opportunity to contract, the Third Amended Complaint does not state a § 1981 claim against any of those defendants.

In sum, the Third Amended Complaint does not state a claim for relief under § 1981 because it does not identify how any defendant's conduct interfered with Collins's "right to make and enforce contracts." Alston v. Spiegel, 988 F.3d 564, 572 (1st Cir. 2021). In light of

Collins's pro se status, he will be afforded leave to amend his complaint within fourteen days if he wishes to set forth allegations curing these deficiencies.

**2. § 1985(3)**

"To plead an actionable claim under [42 U.S.C. § 1985(3)], [a plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" Alston, 988 F.3d at 577 (quoting Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). A complaint cannot survive a motion to dismiss by making "bald claims that certain defendants 'conspired' with one another," id. at 578 (quoting Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980)); rather, it must support that conclusion with "plausible factual allegations sufficient to support a reasonable inference that such an agreement was made," id. (quoting Parker v. Landry, 935 F.3d 9, 18 (1st Cir. 2019)).

Collins generally alleges that GBFB, Morrill, Diversified Communications, Courmont, Freeman Company, and Caryn Leavitt "reached an agreement to exclude [him] from food access opportunities based on race." [Third Am. Compl. ¶ 39]. Specifically, Collins claims that Courmont, on behalf of Diversified Communications, helped to "draft[] or enforc[e] a vendor policy requiring donations to be made exclusively to [the GBFB]," [id. ¶¶ 24–25]; that Morrill "communicated with representatives of . . . Diversified Communications and Freeman Company [to] advocate[] for [Collins's] removal from [a] 2024 event," [id. ¶ 26]; and that Collins was subsequently removed from that event, [id. ¶ 27], while "similarly situated non-Black organizations were permitted to remain and participate," [id. ¶ 28].

Even assuming that these communications would be sufficient to establish the existence of an agreement, however, "not every agreement is sufficient to ground a section 1985(3)

conspiracy [claim]," Parker, 935 F.3d at 18, and the agreement here falls short. To make out a cognizable claim, an agreement must be "motivated by some discriminatory animus," id. (citing Pérez-Sánchez, 531 F.3d at 107), and the complaint must "raise a plausible inference that the [defendants] acted in concert 'at least in part for the very purpose' of depriving [the] plaintiff[] of [his] civil rights," Stand With Us Ctr. for Legal Just. v. Mass. Inst. of Tech., 158 F.4th 1, 24 (1st Cir. 2025) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 276 (1993)). The only factual allegation that would bear on those factors is that Collins was removed from an event while "similarly situated non-Black organizations were permitted to remain and participate." [Third Am. Compl. ¶ 28]. Standing alone, however, that comparison is not sufficient to support the inference that "impairing [Collins's rights] was among the [defendants'] 'conscious objective[s],'" Stand With Us, 158 F.4th at 26 (quoting Bray, 506 U.S. at 275–76), and Collins has not pleaded any statement or conduct that would support his claim that the agreement between the defendants was "based on race," [Third Am. Compl. ¶ 39]. Without factual allegations from which the Court could infer that the agreement was motivated by a desire to impair Collins's rights on the basis of race, he has not stated a claim under 42 U.S.C. § 1985. Once again, however, if Collins can identify evidence suggesting that the purpose of the alleged agreement was to deprive him of his civil rights on the basis of race, he may amend his complaint within fourteen days.

### C. Claims Under State Law

Where the only federal law claims have been dismissed, "it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (quoting Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015)) (first citing Desjardins, 777 F.3d at 45–46; and then citing Rivera-Díaz v. Humana Ins. of

P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014)); see also Eves v. LePage, 842 F.3d 133, 146 (1st Cir. 2016) ("A district court 'may decline to exercise supplemental jurisdiction' if the court 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))), vacated in part and reinstated in part, 927 F.3d 575, 589 (1st Cir. 2019). The Supreme Court has found that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, at this early stage of the litigation, the Court cannot identify a reason for keeping the case in federal court based on the relevant factors. Therefore, the Court will not exercise supplemental jurisdiction over the remaining state law claims and they, too, are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss of GBFB and Morrill, [ECF No. 50]; Freeman Company and its employees, [ECF No. 61];[7] and Courmont, [ECF No. 63],[8] are **GRANTED** as to the federal law claims against those defendants. On that basis, this action is

---

[7] As noted above, the duplicate motion to dismiss filed by Freeman Company, [ECF No. 60-1], is **DENIED AS MOOT** because the Court has ruled on this motion.

[8] Courmont's employer, Diversified Communications, did not join Courmont's motion or file a separate motion to dismiss. The federal law claims against it, however, are coextensive with the federal law claims against Courmont, see [Third Am. Compl. ¶¶ 34, 39–41], meaning that Courmont's motion afforded Collins "notice and an opportunity to amend the complaint or otherwise respond," Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (quoting Future Dev. of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 14 (1st Cir. 1998)), to the issues implicated by his federal law claims against Diversified Communications. Accordingly, the federal law claims against Diversified Communications are **DISMISSED** sua sponte for the same reasons as the federal law claims against Courmont. See id.; Devol Pond Ass'n v. Capone, No. 23-cv-11042, 2024 WL 3329128, at *19 (D. Mass. July 8, 2024), appeal docketed, No. 24-1738 (1st Cir. Aug. 20, 2024); 5B Wright & Miller's Federal Practice & Procedure §§ 1349 n.21, 1357 n.24 (4th ed. Apr. 2026 update).

**DISMISSED** with leave to amend within fourteen days if Plaintiff can set forth specific facts establishing (1) a contractual right for purposes of his § 1981 claim or (2) evidence of a discriminatory intent to interfere with protected rights for purposes of his § 1985 claim. Because the Court is dismissing the action and declining to exercise supplemental jurisdiction over the state law claims against all defendants, the remaining motions to dismiss, [ECF No. 67 (Don Cox)]; [ECF No. 69 (Massachusetts Military Support Foundation)]; [ECF No. 71 (Food For Free)],[9] which concern only state law claims, see [Third Am. Compl. ¶¶ 42–46], are **DENIED AS MOOT**.

**SO ORDERED.**

September 15, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

[9] As noted above, Food for Free's earlier motion to dismiss the Second Amended Complaint, [ECF No. 65], is **DENIED AS MOOT** in light of Collins's filing of the Third Amended Complaint.